# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ELSIE KELLY**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15 C 2958 |
| | ) |
| **PATRICK R. DONAHOE**, | ) |
| Postmaster General United States Postal | ) |
| Service (Great Lakes Area) Agency, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In accordance with its invariable practice in connection with every case newly assigned to its calendar, this Court promptly reviewed the self-prepared Complaint of Employment Discrimination that had been filed on April 3 by Elsie Kelly ("Kelly") against Postmaster General Patrick Donahoe. It then issued a brief April 17 memorandum order ("Order") that directed Kelly's attention to some added documentation that was needed to evaluate her Complaint on an informed basis:

> Although her Complaint was timely filed in relation to the February 5, 2015 denial of reconsideration by the United States Equal Employment Opportunity Commission ("Commission") attached to Kelly's Complaint, the sprawling nature of her hodgepodge narrative makes it impossible for this Court to address her claims without further input from her.

Accordingly the Order directed Kelly to provide specified materials needed for such an evaluation, and she has now complied with that directive.

At the threshold it should be said that although Kelly's EEO Complaint had not included part of the entire laundry list that she had checked off in Complaint ¶ 9 (which asserted in part

that she had suffered discrimination based on color, disability and national origin, none of which had been specified in the EEO Complaint), those deviations are truly minor in relation to a far more fundamental flaw: her failure to connect the purported adverse decision reached by her employer in April 2011 and assertedly repeated on unspecified dates thereafter to any of the categories of purported employment discrimination to which she claims she was subjected. No better demonstration of that fatal defect can be made than to attach to this opinion the July 25, 2014 decision by the Commission and to refer to critical aspects of that decision.

Although the Commission's decision should be read in full to capture its entire flavor, particular note should be taken of the entire discussion that occupies page 2 of that decision. Those findings understandably resulted in a post-hearing summary judgment in favor of the Agency, which in turn led to a final order adopting those findings by the Agency and ultimately to an affirmance of that final order by the Commission. After analysis the Commission found at page 5 of its decision "that the Agency provided legitimate, non-discriminatory reasons for its actions," a finding that was further bolstered by facts demonstrating that Kelly was a poorly performing employee who "engag[ed] in time-wasting practices such as reading magazines, sitting unproductively at her case [sic], backtracking on her route, sitting in her vehicle, and otherwise not performing work" (id.). Then, when Kelly thereafter sought reconsideration of that adverse judgment, the Commission denied that request in a February 5, 2015 formal denial attached as an exhibit to Kelly's Complaint.

In sum, this is clearly a case for which the requirement of "plausibility," added by the Twombly-Iqbal canon to replace the overly generous Conley v. Gibson standard that had been in place for many years, might well have been specifically designed. Indeed, although the Commission's original decision had "without so finding, . . . assume[d] that the Complaint had

established a prima facie case of discrimination on all alleged bases," that assumption was itself overgenerous because Kelly had not done so at all. In short, because of Kelly's failure to have advanced any plausible basis for her complaint of employment discrimination on any ground, both the Complaint and this action are dismissed.[1]

/s/ Milton I. Shadur
_____
Milton I. Shadur
Senior United States District Judge

Date: May 5, 2015

---

[1] This dismissal causes Kelly's In Forma Pauperis Application [Dkt. 4] and her Motion for Attorney Representation [Dkt. 5] to be denied as moot, and this Court so orders.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Case #
1:15-CV-02958

Elsie L. Kelly,
Complainant,

v.

Patrick R. Donahoe,
Postmaster General,
United States Postal Service
(Great Lakes Area),
Agency.

Appeal No. 0120123331

Hearing No. 440-2011-00147X

Agency Nos. 4J-606-0204-10 and 4J-606-0077-11

## DECISION

Complainant filed an appeal from the Agency's final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. The Commission accepts the appeal pursuant to 29 C.F.R. § 1614.405(a). For the following reasons, the Commission AFFIRMS the Agency's final order.

## ISSUES PRESENTED

The issues presented are whether the EEOC Administrative Judge (AJ) properly issued a decision without a hearing, and whether the AJ properly found that Complainant failed to prove that she was subjected to unlawful discrimination as alleged.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Full-time City Carrier at the Chicago-Edgebrook Carrier Annex in Illinois.

On January 3, 2011, Complainant filed an EEO complaint in which she alleged that the Agency discriminated against her on the bases of race (African-American), sex (female), age (54), and in reprisal for prior protected EEO activity when, on April 18 and 22, 2011, and on additional unspecified dates, the Agency denied her requests for auxiliary assistance.

ATTACHMENT

In an investigative statement, Complainant stated that she submitted her requests for assistance on a 3996 form to the Supervisor of Customer Services (S1) because she was overburdened on her route. Complainant stated that S1 denied her requests and demanded that she finish her route within hours because Complainant had shown that she could complete the route within eight hours. Complainant further stated that after her route was adjusted, she had to climb steps, the walk became long, and the sidewalks were cracked open and "arched." Complainant stated that the route adjustment added 10 blocks to her route and took away six blocks.

S1 stated that a Form 3995 is used by a City Carrier to request overtime or auxiliary assistance when she believes that she is not able to complete her route on time. S1 stated that Complainant's route is only 12 blocks long and was adjusted in August 2010. S1 stated that observations of Complainant's work habits while delivering mail on the street revealed that Complainant could deliver the mail within eight hours. S1 stated that Complainant requested a special inspection of her route because she maintained that she could not deliver her mail within eight hours, and the inspection revealed that Complainant wasted time on practices such as backtracking to make deliveries, pausing before going up stairs, and using a cart in an inefficient manner.

S1 also stated that the physical condition of Complainant's route was taken into consideration. She stated that the only cracks in the sidewalks on Complainant's routes are in between cement blocks, and she did not observe any uneven surfaces except in snow.

Another Supervisor of Customer Services (S2) stated that Complainant's requests for auxiliary assistance were denied because of work volumes. S2 stated that Complainant probably has 2.5 to 3 feet of mail per day, which is equivalent to about 45 minutes of office work. S2 stated that Complainant has wasteful work habits and sometimes would waste 1.5 hours doing nothing at work. "What she does is sit, not doing anything; she would tie her route down and walk around the station for an hour, or she would leave, go into the parking lot or garage, and she would be sitting in or behind her vehicle," S2 stated. Report of Investigation (ROI), Affidavit C. S2 stated that Complainant was capable of completing her route within eight hours, but she refused to do so.

The Manager stated that Complainant's route was adjusted by the route adjustment team comprised of union and management representatives. The Manager stated that the union agreed that Complainant's route is an eight-hour route. The Manager stated that he observed Complainant's route, and there are no issues with the streets or sidewalks. The Manager stated that Complainant's requests for auxiliary assistance were denied because the amount of time she requested to do her job was not warranted, and he observed Complainant engaging in time-wasting practices such as reading magazines, sitting unproductively at her case, backtracking on her route, sitting in her vehicle, and otherwise not performing work.

The Manager noted that a block was shifted to a coworker (C1) in error. The Manager stated that after the error was identified by the route adjustment team, the block that was erroneously


Case # 1:15-CV-02958

assigned to C1 was assigned to Complainant, which provided both Complainant and C1 with eight hour routes. He stated that C1 carries her route within eight hours and does not ask for assistance.

*The AJ's Decision*

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an AJ. Complainant timely requested a hearing. On October 21, 2011, the agency moved for summary judgment in its favor. Complainant did not respond to the Agency's motion. On July 30, 2012, the AJ issued summary judgment in favor of the Agency. Specifically, the AJ found that Complainant failed to prove that she was subjected to unlawful discrimination because she did not establish a prima facie case of discrimination or rebut the Agency's non-discriminatory explanations for its actions. The Agency subsequently issued a final order fully adopting the AJ's findings.

## CONTENTIONS ON APPEAL

In a short appeal statement, Complainant notes that S1 told the EEO investigator that Complainant has a "mentality of her against us," and S1 should not refer to her in such a manner. The Agency does not raise any arguments on appeal.

## STANDARD OF REVIEW

In rendering this appellate decision we must scrutinize the AJ's legal *and* factual conclusions, and the Agency's final order adopting them, de novo. See 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an Agency's final action shall be based on a de novo review . . ."); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chap. 9, § VI.B. (Nov. 9, 1999) (providing that both the Administrative Judge's determination to issue a decision without a hearing, and the decision itself, are subject to de novo review). This essentially means that we should look at this case with fresh eyes. In other words, we are free to accept (if accurate) or reject (if erroneous) the AJ's, and Agency's, factual conclusions and legal analysis – including on the ultimate fact of whether intentional discrimination occurred, and on the legal issue of whether any federal employment discrimination statute was violated. See id. at Chap. 9, § VI.A. (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

*Decision without a Hearing*

We must first determine whether it was appropriate for the AJ to have issued a decision without a hearing on this record. The Commission's regulations allow an AJ to issue a

decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. Id. at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. Id. at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case.

If a case can only be resolved by weighing conflicting evidence, issuing a decision without holding a hearing is not appropriate. In the context of an administrative proceeding, an AJ may properly consider issuing a decision without holding a hearing only upon a determination that the record has been adequately developed for summary disposition. See Petty v. Dep't of Defense, EEOC Appeal No. 01A24206 (July 11, 2003). According to the Supreme Court, Rule 56 itself precludes summary judgment "where the [party opposing summary judgment] has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250. In the hearing context, this means that the administrative judge must enable the parties to engage in the amount of discovery necessary to properly respond to any motion for a decision without a hearing. Cf. 29 C.F.R. § 1614.109(g)(2) (suggesting that an administrative judge could order discovery, if necessary, after receiving an opposition to a motion for a decision without a hearing).

After a careful review of the record we find that there was no genuine issue of material fact or credibility so as to warrant a hearing. A decision without a hearing therefore was appropriate.

*Disparate Treatment*

In order to prevail in a disparate treatment claim such as this case, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must initially establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Construction Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 802 n. 13. The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993).

For purposes of analysis, and without so finding, we assume that Complainant established a prima facie case of discrimination on all alleged bases. Nonetheless, the Commission finds that the Agency provided legitimate, non-discriminatory reasons for its actions. Specifically, management stated that it denied Complainant's requests for auxiliary assistance because observations of Complainant on her route revealed that she could complete her route within eight hours. Management also stated that it observed Complainant engaging in time-wasting practices such as reading magazines, sitting unproductively at her case, backtracking on her route, sitting in her vehicle, and otherwise not performing work.

On appeal, Complainant notes that S1 told the investigator that Complainant has a "mentality of her against us," which Complainant ostensibly believes reflects S1's retaliatory motive. However, we do not find that this comment reflects retaliatory animus. We note that that S1's comment was made in response to the investigator's question about whether Complainant ever complained to management about the denial of auxiliary assistance. S1 responded:

> She doesn't really talk to anyone in management. She was a mentality of "her against us." If we try to talk to her in the office, she sits in a chair and turns her back toward management.

ROI, Exhibit B, p. 7.

It is clear from the context of S1's response that S1 was talking about Complainant's overall attitude toward management, not Complainant's EEO activity. Consequently, we do not find that S1's response is evidence of any retaliatory motive against Complainant. We determine that Complainant has not provided any evidence from which it can be reasonably concluded that the Agency's legitimate, non-discriminatory explanations for its actions are pretext for unlawful discrimination. Consequently, we find that the AJ properly found that Complainant failed to prove that the Agency subjected her to unlawful discrimination.

## CONCLUSION

Therefore, based on a thorough review of the record and the contentions on appeal, we AFFIRM the Agency's final order for the reasons set forth in this decision.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:


Case #: 1:15-cv-02958

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and

the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

_[signature]_
Carlton M. Hadden, Director
Office of Federal Operations

___JUL 2 5 2014___
Date